**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**    RECEIVED

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,  ) ) ) | 2019 SEP 30  P 3: 53 |
| **Plaintiff,**  ) ) | DEBRA P. HACKETT, CLK **CIVIL ACTION NO.** |
| **v.**  ) ) | 2:19-cv-740 |
| **MULTI-SOUTH MANAGEMENT SERVICES,**  ) **LLC.**  ) ) ) | **COMPLAINT**  **JURY TRIAL REQUESTED** |
| **Defendant.**  ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended ("ADA"), and the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (pregnancy) and disability and to provide relief to Rochell Crawford ("Charging Party" or "Crawford"), who was adversely affected by such practices, and to prevent further occurrence of such practices.

As alleged with greater particularity in paragraphs fifteen (15) through twenty-nine (29) below, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleges that Defendant Multi-South Management Services, LLC ("Multi-South" or "Defendant") unlawfully discriminated against Crawford when it failed to hire or discharged her because of her pregnancy and medical conditions related to her pregnancy on or about January 3, 2018, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C.S. §§ 2000e(k) and 2000e-2(a)(1).

The EEOC further alleges that Crawford's medical restrictions stemmed from a disability within the meaning of the Americans with Disabilities Act, as amended in 2008, and Defendant failed to hire her or terminated her in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. § 12112(a) and § 12112(b)(5)(B).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and(3), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Alabama, pursuant to Title VII, 42 U.S.C. §2000e-5(f)(3) and the ADA, 42 U.S.C. §12117(a).

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and Title I of the ADA, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and the Americans with Disabilities Act , 42 U.S.C. §12117(a), which incorporates by reference Title VII, 42 U.S.C. §2000e-(f)(1) and §2000e-6, *inter alia.*

2

4. At all relevant times, Multi-South has been continuously a Delaware corporation doing business in the State of Alabama and the City of Montgomery and has continuously had at least fifteen (15) employees.

5. At all relevant times, Multi-South has continuously been an employer engaged in an industry affecting commerce under both Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h), as well as the ADA, 42 U.S.C. § 12111(5) and (7).

6. At all relevant times, Multi-South has been a covered entity covered under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty (30) days prior to the institution of this lawsuit, Crawford filed a Charge of Discrimination with the Commission alleging violations of Title VII and the ADA by Multi-South.

8. The EEOC provided Defendant with notice of Charging Party's Charge of Discrimination.

9. On or about September 4, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII and the ADA were violated with respect to Crawford

10. The Commission's September 4, 2019 Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to provide appropriate relief.

11. In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

3

13. On September 20, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission with respect to the charge filed by Crawford.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

15. In or around January 3, 2018, Multi-South engaged in unlawful employment practices by discriminating against Crawford, a qualified individual with a disability, when it failed to hire or terminated Crawford because of her sex (pregnancy) and medical conditions related to her pregnancy and because she was disabled, regarded as disabled, and had a record of disability, in violation of Title VII, 42 U.S.C. § § 2000e(k) and 2000e-2(a)(1), and the ADA, 42 U.S.C. § 12112(a) and 12112)b)(5)(B).

16. Magnolia Terrace Apartments is an apartment community located in Montgomery, Alabama.

17. Lynd Company was the property management company of Magnolia Terrace Apartments from at least October 2013 until January 2, 2018. On January 3, 2018, Multi-South took over as the property management company of Magnolia Terrace.

18. On or about October 15, 2013, Charging Party Crawford was hired by Lynd to be the Community Director at Magnolia Terrace. As Community Director, Crawford was responsible for, among other things, the inspection of the complex's apartment and property grounds, maintaining records of inspection, and showing the model apartment to prospective tenants.

19. On or about August 15, 2017, Crawford informed her Regional Manager that she was pregnant and that her doctor had classified her pregnancy as "high-risk" and she was an elevated risk of preterm labor.

4

20. Crawford informed her Regional Manager that her doctor had advised her that her risk of preterm labor resulted in physical limitations in the number of apartment tours that she could conduct. In addition, she informed her Regional Manager that she would require weekly injections to prevent preterm labor.

21. On or about October 19, 2017, Crawford underwent a cervical cerclage, a surgery whereby the cervix is stitched to prevent miscarriage and preterm delivery, due to her pregnancy-related complications. Lynd accommodated Crawford's physical limitations and pregnancy-related absences.

22. In October 2017, Crawford was informed by her Regional Manager that Multi-South would be taking over management of Magnolia Terrace. Specifically, her Regional Manager stated that she had spoken to the incoming Multi-South Manager David Shores ("Shores") about Crawford's high-risk pregnancy and accommodations. The Regional Manager informed Crawford that Shores stated he would work with her and would be keeping the entire Magnolia Terrace staff once Multi-South took over Magnolia Terrace.

23. Lynd Regional Manager Tammy Tollinchi ("Tollinchi") worked with Shores to transition management of Magnolia Terrace from Lynd to Multi-South.

24. On January 3, 2018, Multi-South took over complete management of Magnolia Terraces.

25. On January 3, 2018, Shores travelled to Magnolia Terrace. Crawford informed him she had a doctor's note detailing her pregnancy-related limitations. Shores informed Crawford that he had already discussed her limitations and accommodations with Tollinchi and did not need her medical documentation.

5

26. Crawford and other former Lynd employees went through an on-boarding process with Multi-South on January 3, 2018, including notification of new health insurance, salary increases and completion of I-9 paperwork.

27. Crawford was instructed of her new reporting responsibilities and Multi-South's policies and procedures.

28. At the end of the day, Crawford was informed that Respondent had decided "not to move forward with you," and "good luck with your baby."

29. Crawford was the only Magnolia Terrace staff member not hired or terminated.

30. The effect of the practices complained of in paragraphs fifteen (15) through twenty-nine (29) above has been to deprive Charging Party, an applicant or employee covered by the ADA and Title VII, of equal employment opportunities and otherwise adversely affected her status as an applicant or employee because of her sex (pregnancy) and disability.

31. The unlawful employment practices complained of in paragraphs fifteen (15) through twenty-nine (29) above were and are intentional.

32. The unlawful employment practices complained of in paragraphs fifteen (15) through twenty-nine (29) above were done with malice or with reckless indifference to the federally protected rights of the Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on sex or disability, including the denial of reasonable accommodations to qualified individuals with disabilities.

6

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant to make whole Charging Party by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, front pay and reinstatement.

D. Order Defendant to make whole Charging Party by providing appropriate compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs fifteen (15) through twenty-nine (29) above, including, but not limited to, relocation expenses, job search expenses, and medical expenses, and other pecuniary losses, in amounts to be determined at trial.

E. Order Defendant to make whole Charging Party by providing appropriate compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs fifteen (15) through twenty-nine (29) above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary losses in amounts to be determined at trial.

F. Order Defendant to pay Charging Party punitive damages for its malicious and reckless conduct described in paragraphs fifteen (15) through twenty-nine (29) above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

7

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED,

**SHARON FAST GUSTAFSON**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**MARSHA RUCKER**
Birmingham District Regional Attorney
PA Bar No. 90041

Equal Employment Opportunity
Commission
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Tel. (205) 212-2045
Fax. (205) 212-2041

8